UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF INDIANA

INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KARL TRAHAN, Individually and on Behalf of All Others Similarly Situated, | : | No. 1:16-cv-3161 |
| | : | |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| | : | COMPLAINT FOR BREACH OF |
| vs. | : | FIDUCIARY DUTY AND VIOLATIONS OF |
| | : | THE FEDERAL SECURITIES LAWS |
| INTERACTIVE INTELLIGENCE GROUP, | : | |
| INC., GENESYS TELECOMMUNICATIONS | : | |
| LABORATORIES, INC., GIANT MERGER | : | |
| SUB INC., GREENEDEN LUX 3 S.ÀR.L., | : | |
| GREENEDEN U.S. HOLDINGS I, LLC, | : | |
| GREENEDEN U.S. HOLDINGS II, LLC, | : | |
| DONALD E. BROWN, MITCHELL E. | : | |
| DANIELS, EDWARD L. HAMBURG, | : | |
| MICHAEL C. HEIM, MARK E. HILL and | : | |
| RICHARD A. RECK, | : | |
| | : | |
| Defendants. | : | |
| | : | DEMAND FOR JURY TRIAL |

Plaintiff, by counsel, individually and on behalf of all others similarly situated, respectfully brings this class action for breach of fiduciary duty and violations of §§14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder against the herein named defendants and alleges the following:

## SUMMARY OF THE ACTION

1.      This is a stockholder class action brought on behalf of the holders of Interactive Intelligence Group, Inc. ("Interactive" or the "Company") common stock against Interactive, its Board of Directors (the "Board"), Genesys Telecommunications Laboratories, Inc., a California corporation ("Parent"), Giant Merger Sub Inc., an Indiana corporation and a direct, wholly owned subsidiary of Parent ("Merger Sub"), Greeneden Lux 3 S.àR.L., a societe a responsabilite limitee under the laws of Luxembourg ("Lux 3"), Greeneden U.S. Holdings I, LLC, a Delaware limited liability company ("Holdings I"), and Greeneden U.S. Holdings II, LLC, a Delaware limited liability company ("Holdings II," and with Parent, Merger Sub, Lux 3 and Holdings I, "Genesys") for breaches of fiduciary duty, aiding and abetting said breaches and other violations of federal law arising out of defendants' efforts to complete the sale of the Company to Genesys, pursuant to an unfair process and for an unfair price (the "Acquisition"). This matter arises out of defendants' dissemination of a false and misleading proxy statement in violation of §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder, and the Board's willful or reckless breaches of their fiduciary duties owed to the Company's stockholders under state law.

2.      Interactive is a global leader of cloud and on-premise solutions for customer engagement, communications and collaboration, with offices in Indianapolis, Indiana. On August 31, 2016, defendants announced that they had entered into a definitive merger agreement (the "Merger Agreement"), which had been approved by the Board. Pursuant to the terms of the Merger Agreement, Genesys will acquire all of the outstanding shares of Interactive common stock for the inadequate price of $60.50 per share.

- 1 -

3.     The Acquisition is the product of a fundamentally unfair process that is designed to ensure the sale of Interactive to Genesys on terms preferential to Genesys and Interactive's Board members and management, but detrimental to plaintiff and the other Interactive shareholders.  The process leading to the Acquisition was tainted by conflicts, tilted toward Genesys and driven by Interactive's Board and executive management, who collectively own more than 4.8 million shares of Interactive stock.  For the Board and Company management, the Acquisition provides a liquidity event for their large illiquid Interactive holdings.

4.     But that is not all.  In addition to "cashing in" their illiquid holdings, the Company's management will be staying on board after the transaction.  As indicated in the press release announcing the Acquisition, Interactive's senior management team will likely remain with the new organization after the Acquisition is complete.

5.     As a result of the unfair process, the Acquisition price of $60.50 per share is also unfair, as the Board willfully or recklessly failed to obtain adequate compensation for Interactive's shareholders. The Acquisition price of $60.50 per share represents a miniscule 7% premium to the closing price of Interactive common stock on the day before the deal was announced.  According to Yahoo! Finance, at least one analyst has set a price target for Interactive stock at $67.00 per share.  In the last three years, Interactive common stock traded as high as $81.59 per share on March 4, 2014.

6.     While the Acquisition will preclude Interactive shareholders from sharing in the Company's future growth, Genesys will benefit handsomely from the deal.  Genesys and only Genesys will reap the benefits of Interactive's business transition and growth, as well as the Company's oft-rewarded PureCloud product line.

7.     In addition, the Board willfully or recklessly breached its fiduciary duties by agreeing to preclusive deal protection devices in connection with the Merger Agreement the Company entered into with Genesys.  These provisions, which collectively preclude any competing offers for the Company, include: (i) a no-solicitation provision that precludes the Company from providing confidential Company information to, or even communicating with, potential competing bidders except under extremely limited circumstances; (ii) a matching rights

provision that allows Genesys to match any competing superior proposal; and (iii) a termination fee provision that obligates the Company to pay Genesys a $43 million termination fee in the event the Acquisition is terminated in favor of a superior proposal.

8.     In an attempt to secure shareholder support for the unfair Acquisition, on September 20, 2016, defendants issued a materially false and misleading Preliminary Proxy on Schedule 14A, and on October 4, 2016, defendants issued a materially false and misleading Definitive Proxy on Schedule 14A (collectively, the "Proxy").  The Proxy, which recommends that Interactive shareholders vote in favor of the Acquisition, omits and/or misrepresents material information and critical data, inputs and assumptions included in the fairness analyses of the Board's financial advisor, Union Square Advisors LLC ("Union Square"), and elements of managements' projections relied upon by Union Square in its fairness analyses.  Specifically, the Proxy omits and/or misrepresents the material information detailed *infra* in ¶57, in willful or reckless contravention of defendants' fiduciary duties and in violation §§14(a) and 20(a) of the 1934 Act.  Without this material information, Interactive shareholders were prevented from making a fully informed decision as to the Acquisition and the adequacy of the Acquisition consideration.  In the absence of this material information, Interactive shareholders voted in favor of the Acquisition on November 9, 2016.  Defendants have announced they anticipate the Acquisition closing in early December 2016.

9.     In sum, by agreeing to the Acquisition, each of the defendants has willfully or recklessly breached their fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and/or has aided and abetted such breaches.  Rather than acting in the best interests of the Company's shareholders, defendants spent substantial effort tailoring the structural terms of the Acquisition to aggrandize their own personal interests and to meet the specific needs of Genesys, which efforts will eliminate the equity interest of Interactive's public shareholders.

10.     In essence, the Acquisition is the product of a hopelessly flawed process that was designed to ensure the merger of Interactive with Genesys on terms preferential to Genesys and defendants and detrimental to plaintiff and Interactive's shareholders.

11.     As a result of defendants' conduct, plaintiff and the members of the Class have been harmed.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the 1934 Act for violations of §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.  The Court also has jurisdiction over this action pursuant to 15 U.S.C. §78bb(f)(3)(A)(i), because it is a class action based on the statutory or common law of Indiana, defendant Interactive's state of incorporation, and thus may be maintained in federal court.  This Court has supplemental jurisdiction under 28 U.S.C. §1367.

13.     This Court has jurisdiction over each defendant because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

14.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Interactive's headquarters are located at 7601 Interactive Way, Indianapolis, Indiana, and defendants include officers and/or directors who reside in Indiana.

## PARTIES

15.     Plaintiff Karl Trahan is, and at all times relevant hereto was, a shareholder of Interactive.

16.     Defendant Interactive is an Indiana corporation headquartered in Indianapolis, Indiana.

17.     Defendant Parent is a California corporation headquartered in San Francisco, California.

18.     Defendant Merger Sub is an Indiana corporation and a direct, wholly owned subsidiary of Parent.

19.     Defendant Lux 3 is a societe a responsabilite limitee under the laws of Luxembourg.

20.     Defendant Holdings I is a Delaware limited liability company.

- 4 -

21.     Defendant Holdings II is a Delaware limited liability company.

22.     Defendant Donald E. Brown ("Brown"), co-founder of Interactive, is and has been at all relevant times Interactive's Chairman, President, CEO and a member of the Board.

23.     Defendant Mitchell E. Daniels is and has been at all relevant times a member of the Board.

24.     Defendant Edward L. Hamburg is and has been at all relevant times a member of the Board.

25.     Defendant Michael C. Heim is and has been at all relevant times a member of the Board.

26.     Defendant Mark E. Hill is and has been at all relevant times a member of the Board.

27.     Defendant Richard A. Reck is and has been at all relevant times a member of the Board.

28.     The defendants named above in ¶¶22-27 are sometimes collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all public holders of Interactive common stock who are being and will be harmed by defendants' actions described below (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

30.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

31.     The Class is so numerous that joinder of all members is impracticable.  According to Interactive's SEC filings, as of August 26, 2016, there were more than 22 million shares of Interactive common stock outstanding.

32.    There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class member.  The common questions include, *inter alia*, the following:

(a)    whether defendants have breached their fiduciary duties of undivided loyalty, independence, or due care with respect to plaintiff and the other members of the Class in connection with the Acquisition, and/or are aiding and abetting therein;

(b)    whether defendants are engaging in self-dealing in connection with the Acquisition, and/or are aiding and abetting therein;

(c)    whether defendants are unjustly enriching themselves and other insiders or affiliates of Interactive and/or Genesys, and/or are aiding and abetting therein;

(d)    whether defendants have willfully or recklessly breached any of their fiduciary duties to plaintiff and the other members of the Class in connection with the Acquisition, including the duties of good faith, diligence, candor and fair dealing, and/or are aiding and abetting therein;

(e)    whether defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets, and/or have aided and abetted therein;

(f)    whether the Acquisition compensation payable to plaintiff and the Class is unfair and inadequate;

(g)    whether defendants have violated §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder by disseminating a materially false and misleading proxy statement to Interactive shareholders; and

(h)    whether plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

33.    Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

34.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

35.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

36.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

37.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## THE ACQUISITION

38.     Interactive provides unified business communications solutions for call centers, enterprise IP telephony, and business process automation.  Backed by a 20-plus year history of industry firsts, 150-plus pending patent applications, and more than 6,000 global customer deployments, Interactive offers customers fast return on investment, along with robust reliability, scalability and security.   It is also the only company recognized by the top global industry analyst firm as a leader in both the cloud and on-premises customer engagement markets.  The company is headquartered in Indianapolis, Indiana and has more than 2,000 employees worldwide.

39.     Customers seeking to resolve a problem or learn about products and services have increasingly turned to websites, online messaging, chats and other relatively new methods of communicating with a business.  Interactive software helps call center operators analyze data and improve customer service calls.  It counts Coca-Cola Co., Sony Corp. and Kohl's Corp. as some of its major customers.

40.     The Acquisition appears to be timed to take advantage of a temporary downturn in the Company's business, as it has recently and now successfully gone through a transition to move its products to the cloud.

41.     On March 10, 2016, the success of Interactive's transition to cloud-based services was recognized when Interactive was awarded *Cloud Computing* magazine's 2015 Product of the Year Award.  The press release announcing the award stated in pertinent part:

**Interactive Intelligence Has Won Cloud Computing Magazine's 2015 Product of the Year Award**

*Interactive Intelligence PureCloud Engage℠ honored for its reliability, scalability, security and simplicity*

. . . Interactive Intelligence Group Inc., ***a global leader of cloud services for customer engagement***, communications and collaboration, has won Cloud Computing magazine's 2015 Product of the Year Award for PureCloud Engage℠.

Cloud Computing magazine's Product of the Year Award honors vendors with ***the most innovative, useful, and beneficial cloud products and services***.

PureCloud Engage℠ is an omnichannel customer engagement cloud service that helps contact centers accelerate business impact, deliver consistent outcomes, and innovate the customer and agent experience.  It's delivered from the Interactive Intelligence PureCloud℠ platform – the first cloud platform based on microservice architecture designed for multi-use cases: customer engagement, communications and collaboration.

"We selected PureCloud Engage℠ as a ***Product of the Year based on its innovative microservice architecture running atop Amazon Web Services***," said TMC CEO Rich Tehrani.  "Its comprehensive set of services running on a single platform also helps customers break down the silo between business users and contact center agents, and even between enterprises and their partners and customers."

"We built PureCloud Engage℠ to get customers up and running in days or weeks instead of months," said Interactive Intelligence CMO Jeff Platon.  "To help customers stay competitive, we also made sure that it could deliver value faster through a continuous development process that offers new functionality weekly.  We also got rid of long-term contracts.  Customers can go month-to-month with absolutely no strings attached.  This makes PureCloud Engage℠ an extremely low-risk proposition with the potential for dramatic business impact."

PureCloud Engage℠ includes rich contact center functionality, such as omnichannel routing, advanced speech-enabled interactive voice response (IVR), call recording, quality management, outbound and predictive dialing, reporting, CRM integrations, and graphical scripting.  Its communications and collaboration functionality includes IP PBX capabilities, chat, video conferencing, corporate directory, desktop sharing, and content management.

42.     On April 13, 2016, Interactive announced the receipt of its second award in as many months – Frost & Sullivan's 2016 North American Cloud Contact Center Visionary Innovation Leadership Award.  The press release announcing the award stated in pertinent part:

**Interactive Intelligence Receives Frost & Sullivan's North American Cloud Contact Center Visionary Innovation Leadership Award**

*Interactive Intelligence receives award for visionary innovation and performance of its latest cloud solution, PureCloud*[℠]

. . . Interactive Intelligence Group Inc., a global leader of cloud services for customer engagement, communications and collaboration, has received Frost & Sullivan's 2016 North American Cloud Contact Center Visionary Innovation Leadership Award.

Frost & Sullivan selected Interactive Intelligence for the award based on ***the visionary innovation and performance of its latest cloud solution, PureCloud***[℠].

PureCloud's[℠] unique microservice architecture running on Amazon Web Services enables companies to deploy in days, while offering continuous delivery of the most innovative customer engagement features.  In addition to rich customer engagement features,  PureCloud[℠] offers business communications and collaboration functionality.

According to the report, "***Interactive Intelligence has produced a winner*** with the strategy behind the design of PureCloud.  Its ***rapid scalability, flexibility, ease of use, and affordability*** address key needs in the market.  With its ***strong overall performance and potential to increase its market presence*** with PureCloud, Interactive Intelligence has earned Frost & Sullivan's 2016 Visionary Innovation Leadership Award for Cloud Contact Centers."

The Frost & Sullivan North American Cloud Contact Center Visionary Innovation Leadership Award is given to a single vendor based on how it performs against key competitors in the following areas: company culture, vision alignment, technological sophistication, a focus on unmet needs, growth performance, and growth pipeline.

Commenting on Interactive's technological sophistication, the report states: "PureCloud brings ***significant technological advantages to the market***.  PureCloud was architected as a set of stateless, independently load-balanced microservices running atop the scalable Amazon Web Services Cloud.  This architecture was designed to achieve new levels of reliability, security and scalability.  PureCloud also integrates easily with third-party applications using REST APIs."

The report also commends Interactive Intelligence for making it ***easy to purchase*** PureCloud[℠].  "The company took a number of steps to make it easy and affordable to adopt PureCloud.  It created a subscription plan that enables customers to pay monthly for what they use, with no commitment and no hidden fees at competitive prices.  It also implemented an online ordering process that enables organizations to purchase directly from the company's website, and lets customers change their subscription at any time."

43. Moreover, the Company has recently announced positive financial results. On August 1, 2016, Interactive reported total revenues of $108.8 million in the second quarter of fiscal year 2016 (ended June 30, 2016), representing a 13% year-over-year increase when compared to the $96.3 million reported in the same period of the previous year. Additionally, Interactive reported a 43% increase in cloud subscriptions, from $21.9 million in the second quarter of 2015 to $31.3 million.

44. Commenting on these results, defendant Brown stated:

> "***PureCloud is happening*** . . . . One number – 204 – the number of newly licensed PureCloud® customers in the quarter, tells much of this story. We had 24 PureCloud customers at the end of last year. ***Six months later we had well over 300***. This rapid growth reflects the considerable interest and demand we're seeing from both small and large businesses across all our major geographic markets. This growth also happened with the strong support and involvement of our partners, who accounted for 37% of this quarter's PureCloud deals."

> . . . "Our solid top-line results in the quarter were driven by the combination of 43% growth in cloud subscriptions and strong on-premises sales. In addition to a very large transaction that contributed significantly to our on-premises performance, we added another 37 new CIC customers in the second quarter for a total of six deals over $1.0 million. Our top-line growth resulted in ***a better than expected bottom line***, and we continued to generate positive operating cash flow in both the second quarter and first half of this year."

> . . . "Looking forward, we believe ***we remain very well positioned to gain market share*** and become the leader in the customer engagement market. As the only vendor in Gartner's "leaders" quadrant for both cloud and on-premises contact center solutions, we're uniquely capable of providing this robust technology that organizations of any size, in any industry, anywhere in the world, can implement in any way. Our commitment to innovation will continue in all phases of our business, from our new flexible licensing and pricing models and accelerated approach to solutions implementation, to, of course, ***our industry-leading product development***."

45. Then on September 8, 2016, the Company announced that it had received its third award in 2016, Frost & Sullivan's North American Cloud Customer Contact Center Applications Growth Excellence Leadership Award. The press release announcing the award stated in pertinent part:

**Interactive Intelligence Receives Frost & Sullivan's North American Cloud Customer Contact Center Applications Growth Excellence Leadership Award**

*Interactive Intelligence receives award for its industry-leading growth in the cloud contact center applications market, competitive and feature-rich capabilities, and excellent customer support*

. . . Interactive Intelligence Group Inc., a global leader of cloud services for customer engagement, communications and collaboration, has received Frost & Sullivan's 2016 North American Cloud Customer Contact Center Applications Growth Excellence Leadership Award.

According to the award report, Frost & Sullivan selected Interactive Intelligence for "***its industry-leading growth in the cloud contact center applications market***, competitive and feature-rich capabilities, and excellent customer support."

***The report highlights Interactive's growth strategy, and particularly its latest cloud solution, PureCloud***®, which has ***accelerated that growth***: "With PureCloud, the company has introduced a full-featured contact center and business communications offering that is simple, scalable, and affordable. Indeed, the company priced this offering to disrupt the market."

PureCloud is a public cloud offering based on microservice architecture and built atop the scalable Amazon Web Services Cloud.  Interactive Intelligence also offers a private cloud solution, Communications as a Service™ (CaaS).

The report states ***that Interactive's growth is sustained because of its healthy roadmap of product enhancements in the pipeline***: "The company continues to address current customer requirements and unmet needs through continual development of its CaaS, private cloud platform, and PureCloud."

Commending Interactive for its customer ownership experience, the award report states, "From the outset, when businesses start to work with Interactive Intelligence, the company strives to understand the breadth of business needs, matching them with its contact center capabilities, but also the greater business. The company's cloud platforms enable customers to also utilize its breadth of telephony and UCC applications, and content management capabilities, which are fully integrated across platforms."

46.     On August 31, 2016, defendants announced that they had entered into the Merger Agreement, which had been approved by the Board.  Pursuant to the terms of the Merger Agreement, Genesys will acquire all of the outstanding shares of Interactive common stock for the inadequate price of $60.50 per share.

47.     The press release announcing the Acquisition stated in pertinent part:

**Genesys to Acquire Interactive Intelligence to Create the World's Premier Omnichannel Customer Experience Company**

- Extends Global Market Leadership and Product Portfolio

- Creates a Leader Exclusively Focused on Customer Experience Solutions

- Genesys Committed to Significant R&D Investment to Support Continued Innovation Across Combined Product Portfolio

- 11 -



(Graphic: Business Wire)

. . . Genesys (www.genesys.com), a market leader in omnichannel customer experience and contact center solutions, and Interactive Intelligence Group Inc. (www.inin.com), a global leader of cloud and on-premise solutions for customer engagement, communications and collaboration, today announced that they have entered into a definitive agreement under which Genesys will acquire Interactive Intelligence in a transaction valued at approximately $1.4 billion. Under the terms of the agreement, Interactive Intelligence shareholders will receive $60.50 per share in cash, representing a premium of 36% to Interactive Intelligence's unaffected closing stock price on July 28, 2016, the trading day prior to media reports that Interactive Intelligence was considering strategic alternatives, and a premium of 42% to the 30 calendar day average closing price prior to the unaffected closing price on July 28, 2016.

This transaction will accelerate Genesys' ability to execute on its mission of powering the world's best customer experiences at scale, anytime, anywhere – over any channel, in the cloud and on-premise. Both Genesys and Interactive Intelligence have developed best-in-class capabilities as recognized by Gartner and other leading industry analysts, with highly complementary product portfolios that serve adjacent market segments. Together, the combined company will provide the broadest customer experience solutions for organizations of all sizes around the world that support billions of customer interactions each year across a range of industries.

As a larger entity with increased scale, Genesys is committed to accelerate innovation in the customer experience market, with more than $1.3 billion in revenue and annual R&D spend approaching $200 million. Both cloud and on-

- 12 -

premise product portfolios will continue to be supported and offered to the marketplace, with significant R&D investment across the full product portfolio.

"This is a milestone transaction that combines industry-leading expertise and capabilities to enable lasting customer relationships, accelerate innovation and drive growth," said Paul Segre, Chief Executive Officer, Genesys. "Our combined product portfolio will provide the broadest set of transformative customer experience solutions optimized for customers of all sizes and sophistication levels, available both in the cloud and on-premise. We will significantly invest across the entire Interactive Intelligence product portfolio to support the continued momentum of PureCloud®, Cloud Communications-as-a-Service℠ (CaaS) and Customer Interaction Center™ (CIC), in addition to the rich portfolio of products offered by Genesys today. We are excited to work with the Interactive Intelligence team to deliver even greater innovation and value to our global customers and partners."

Dr. Don Brown, Chairman, President and Chief Executive Officer, Interactive Intelligence said, "We have been working for the past 22 years to build an outstanding company with innovative, disruptive technology solutions that transform businesses. I am confident that our agreement with Genesys, which follows a careful evaluation of strategic alternatives, provides Interactive Intelligence shareholders with immediate and significant value, and will deliver meaningful benefits to our customers, partners and employees. The combination of Genesys and Interactive Intelligence provides a complete portfolio to address all market segments by combining Interactive Intelligence's PureCloud, Cloud Communications-as-a-Service (CaaS), and Customer Interaction Center (CIC) with Genesys' offerings. I am excited for the combined company to continue to grow and meet the needs of organizations around the world."

**Approvals**

The transaction is expected to close by the end of the year, subject to customary closing conditions, including regulatory approval and approval by Interactive Intelligence shareholders. The transaction has been unanimously approved by Interactive Intelligence's Board of Directors and Genesys' Operating Committee. Dr. Brown, who owns approximately 17% of Interactive Intelligence shares, has agreed to vote his shares in favor of the transaction.

**Additional Details**

Genesys intends to fund the transaction through a combination of existing cash on hand and debt financing. The transaction is not contingent upon financing, with committed debt financing being provided by Bank of America Merrill Lynch, Citigroup Global Markets Inc., Goldman Sachs and RBC Capital Markets.

**Advisors**

BofA Merrill Lynch, Citi, Goldman Sachs and RBC Capital Markets are serving as financial advisors to Genesys, and Fried, Frank, Harris, Shriver & Jacobson LLP is serving as legal advisor. Union Square Advisors LLC is serving as exclusive financial advisor to Interactive Intelligence, and Faegre Baker Daniels LLP is serving as legal advisor.

48.     The Acquisition is the product of a fundamentally unfair process that is designed to ensure the sale of Interactive to Genesys on terms preferential to Genesys and Interactive's Board members and management, but detrimental to plaintiff and other Interactive shareholders. The process leading to the Acquisition was tainted by conflicts, tilted toward Genesys and driven by Interactive's Board and executive management, who collectively own more than 4.8 million shares of Interactive stock.  For the Board and Company management, the Acquisition provides a liquidity event for their large illiquid Interactive holdings.  If the Acquisition closes, members of the Board and Company management will receive **_over $292 million_** from their sale of their shares of Interactive stock.

49.     From the Acquisition, Interactive's officers and directors will also receive millions of dollars in special payments – not being made to ordinary shareholders – for currently unvested stock options, performance units, and restricted shares, all of **_which shall, upon the merger's closing, become fully vested and exercisable_**.  The Company's senior management is also entitled to receive from the Acquisition over $20.9 million in change-of-control payments. Moreover, the Company's management appears to be staying on board for the long term after the Acquisition.  As reported in the press release announcing the Acquisition, Interactive's senior management team will likely remain with the new organization after the Acquisition is complete.

50.     The Board's financial advisor, Union Square, is also conflicted.  Union Square has received $14 million from Genesys's majority owner, Permira Advisers LLC, in the last two years.  By steering the process to Genesys, one of Permira's companies, Union Square will be paid another $16.5 million upon the closing of the merger.

51.     The process that led up to the Acquisition was fundamentally flawed and unfair. While the Board members conducted what appeared to be a "process," they willfully or recklessly breached their duties in a number of ways, and in two that are significant.  First, in July 2016, the Board willfully or recklessly directed its financial advisor to send potential bidders a process letter that, among other things, advised bidders that its bottom line was $60.00 per Interactive share.  By so doing, the Board capped whatever stockholders could hope to receive.  It is certainly no surprise then that the final price the Board willfully or recklessly

accepted was a wholly inadequate $60.50 per share. Second, on July 19, 2016, Genesys submitted its preliminary indication of interest at $62.00, but ultimately dropped that bid back down to $60.00 per share. Rather than insisting on $62.00 per Company share or higher, the Board members willfully or recklessly capitulated and took the $60.50 per share Genesys ultimately offered out of their own selfish liquidity interests.

52. As a result of the unfair process, the Acquisition price of $60.50 per share is also unfair, as the Board willfully or recklessly failed to obtain adequate compensation for Interactive's shareholders. The Acquisition price of $60.50 represents a miniscule 7% premium to the closing price of Interactive common stock on the day before the deal was announced. According to Yahoo! Finance, at least one analyst has set a price target for Interactive stock at $67.00 per share. In the last three years, Interactive common stock traded as high as $81.59 per share on March 4, 2014.

53. While the Acquisition will preclude Interactive shareholders from sharing in the Company's future growth, Genesys will benefit handsomely from the deal. Genesys and only Genesys will reap the benefits of Interactive's business transition and growth, as well as the Company's oft-rewarded PureCloud product line.

54. In addition, defendants willfully or recklessly agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Acquisition a *fait accompli* and ensure that no competing offers will emerge for the Company.

55. First, concurrently with the execution and delivery of the Merger Agreement, Genesys entered into a voting agreement with defendant Brown, pursuant to which Brown willfully or recklessly agreed, among other things to vote the 3,827,448.56 shares of Interactive common stock beneficially owned by him, which represent approximately 17.1% of the shares of Interactive common stock issued and outstanding on the record date, in favor of the Merger Agreement and the merger and against any other proposal or offer to acquire Interactive. In addition, the Proxy reported that Interactive expects that its directors and executive officers will vote their shares in favor of the proposal to approve the merger, and when their holdings are combined with those of defendant Brown, a collective 4,364,549 shares of Interactive (or 19.5%

of the total) has already committed to vote in favor of the merger.  Thus, any potential alternate acquirer would start in a huge hole, lacking the support of the holders of approximately 19.5% of the Company's common shares.

56.     Second, to ensure Genesys, and only Genesys, acquires Interactive, defendants willfully or recklessly included several deal protection devices in the Merger Agreement.  These provisions, which collectively preclude any competing offers for the Company, include: (i) a no-solicitation provision that precludes the Company from providing confidential Company information to, or even communicating with, potential competing bidders except under extremely limited circumstances; (ii) a matching rights provision that allows Genesys to match any competing superior proposal; and (iii) a termination fee provision which obligates the Company to pay Genesys a $43 million termination fee in the event the Acquisition is terminated in favor of a superior proposal.

57.     In an attempt to secure shareholder support for the unfair Acquisition, defendants issued the materially false and misleading Proxy.  The Proxy, which recommends that Interactive shareholders vote in favor of the Acquisition, omits and/or misrepresents material information about the unfair consideration offered in the Acquisition, and the actual intrinsic value of the Company on a stand-alone basis and as a merger partner for Genesys.  Specifically, the Proxy omits and/or misrepresents the material information set forth below, in contravention of §§14(a) and 20(a) of the 1934 Act.

(a)     *With respect to Union Square's Selected Public Companies Analysis (set forth in the Proxy at 51-52), the following multiples for each of the comparable companies selected by Union Square in its analysis: (i) EV/2016E Revenue (Management Case); (ii) EV/2017E Revenue (Management Case); (iii) EV/2016E Revenue (Wall Street Case); and (iv) EV/2017E Revenue (Wall Street Case)*.  In combination with benchmarking analyses, the disclosure of individual multiples for each selected public company will demonstrate if the financial advisor's below-average selected multiples are truly representative of the Company's value relative to its peers. Currently, it is impossible to determine whether higher multiples should be selected and applied to Interactive from the disclosure of only the mean and median

multiples. This is especially relevant since the values would be in excess of the consideration simply using the mean multiples observed and an appropriate transaction premium.

(b)     *With respect to Union Square's Selected Public Companies Analysis (id.), whether Union Square performed any type of benchmarking analysis for Interactive in relation to the selected public companies*.  As benchmarking is foundational to any market valuation approach, disclosing any and all benchmarking analyses will allow shareholders to determine whether the financial advisor's analysis was performed correctly and whether the consideration is appropriate. Specifically, Interactive was a very fast growing company exhibiting significant margin expansion. As such, it would not be unusual for it to benchmark among the best out of its peers and, therefore, should be afforded much higher than average multiples.

(c)     *With respect to Union Square's Selected Precedent Transactions Analysis (id. at 53-54): the (i) EV/ LTM revenue; (ii) EV/ NTM revenue (Management Case); and (iii) EV/ NTM revenue (Wall Street Case) multiples for each of the precedent transactions selected*.  In combination with benchmarking analyses, the disclosure of individual multiples for each selected precedent transaction will demonstrate if the financial advisor's below-average selected multiples are truly representative of the Company's value relative to its peers. Currently, it is impossible to determine whether higher multiples should be selected and applied to Interactive from the disclosure of only the mean and median multiples.  This is especially relevant since many of the observed transactions occurred more than three years ago which may be skewing the reported average multiples lower.

(d)     *With respect to Union Square's Selected Precedent Transactions Analysis (id.), whether Union Square performed any type of benchmarking analysis for Interactive in relation to the selected precedent transactions*.  As benchmarking is foundational to any market valuation approach, disclosing any and all benchmarking analyses will allow shareholders to determine whether the financial advisor's analysis was performed correctly and whether the consideration is appropriate. Specifically, Interactive was a very fast growing company exhibiting significant margin expansion. As such, it would not be unusual for it to

benchmark among the best out of its peers and, therefore, should be afforded much higher than average multiples which would result in indicated values in excess of the deal price.

(e)     *The financial projections provided by Interactive management and relied upon by Union Square for purposes of its analysis, for fiscal years 2016-2018 (id. at 46-48), for the following items: (i) taxes (or tax rate); (ii) capital expenditures; (iii) changes in net working capital; and (iv) any other adjustments to unlevered free cash flow*.  It is important to disclose these individual amounts which can have a significant effect on unlevered free cash flows in order to determine if the projected values reflect a plausible, economic reality for the Company.

(f)     *The financial projections provided by Interactive management and relied upon by Union Square for purposes of its analysis, for fiscal years 2016-2018 (id.), for the following items: (i) the financial projections prepared by Wall Street research analysts and relied upon by Union Square for purposes of its analysis; and (ii) any projections that available for the Company beyond 2018*.  Given that the Company is in a very high growth phase in 2018 wherein EBIT quintuples and unlevered free cash flow triples while revenues grow by 18%, it is entirely inappropriate to immediately truncate a DCF to a 3.5%-4.5% perpetuity growth rate.  In doing so, the financial advisor substantially undervalues Interactive. Additional projections for out years would allow shareholders to correctly implement a DCF since Union Square did not properly perform one.

58.     As explained above, this information was material to the decision of Interactive's shareholders whether or not to vote in favor of the Acquisition.  As such, defendants' willful or reckless breaches of their fiduciary duties and violations of §§14(a) and 20(a) of the 1934 Act have harmed plaintiff and Interactive's other public shareholders.  Thus, plaintiff requests an award of damages sufficient to redress shareholders for the damage caused by defendants' willful or reckless breaches of their fiduciary duties and violations of §§14(a) and 20(a) of the 1934 Act.

59.     Plaintiff alleges herein that defendants, separately and together, in connection with the Acquisition, willfully or recklessly breached and/or aided and abetted in the willful or

reckless breach of fiduciary duties owed to plaintiff and the other public shareholders of Interactive, including the duties of loyalty, good faith, candor, due care and independence.  As a result of these willful or reckless breaches of fiduciary duties and the aiding and abetting therein, neither plaintiff nor the Class will receive adequate or fair value for their Interactive common stock in the Acquisition.

## COUNT I

### Claim for Breach of Fiduciary Duties and Aiding and Abetting
### Against All Defendants

60. Plaintiff repeats and realleges each allegation set forth herein.

61. The Individual Defendants, aided and abetted by Interactive, Parent, Merger Sub, Lux 3, Holdings I and Holdings II, have willfully or recklessly and in bad faith breached their fiduciary duties of care, loyalty, candor, good faith, and independence owed to the public shareholders of Interactive and have acted to put their personal interests ahead of the interests of Interactive's shareholders.

62. By the acts, transactions and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, willfully or recklessly and in bad faith are attempting to unfairly deprive plaintiff and the other members of the Class of the true value of their investment in Interactive.

63. The Individual Defendants have willfully or recklessly and in bad faith breached their fiduciary duties by entering into the Acquisition without regard to the fairness of the transaction to Interactive's shareholders.  Interactive, Parent, Merger Sub, Lux 3, Holdings I and Holdings II aided and abetted the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the other holders of Interactive stock.

64. As demonstrated by the allegations above, the Individual Defendants willfully or recklessly and in bad faith failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the shareholders of Interactive because, among other reasons, they failed to ensure a fair process and maximization of shareholder value.

65.     Because the Individual Defendants dominate and control the business and corporate affairs of Interactive, and are in possession of private corporate information concerning Interactive's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Interactive which makes it inherently unfair for them to pursue any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

66.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have willfully or recklessly and in bad faith failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

67.     As a result of the actions of defendants, plaintiff and the Class will be irreparably harmed.

## COUNT II

**Against the Individual Defendants and Interactive for Violations of §14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder**

68.     Plaintiff repeats and realleges each allegation set forth herein.

69.     The Individual Defendants and Interactive disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

70.     The Proxy was prepared, reviewed and/or disseminated by the Individual Defendants and Interactive.  It misrepresented and/or omitted material facts, including material information about the unfair sales process for the Company, the unfair consideration offered in the Acquisition, and the actual intrinsic value of the Company's assets.

71.     In so doing, the Individual Defendants and Interactive made untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.  By virtue of their positions within the Company, the Individual Defendants and

- 20 -

Interactive were aware of this information and of their duty to disclose this information in the Proxy.

72.     The Individual Defendants and Interactive were at least negligent in filing the Proxy with these materially false and misleading statements.

73.     The omissions and false and misleading statements in the Proxy are material in that a reasonable shareholder would consider them important in deciding how to vote on the Acquisition.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to shareholders.

74.     By reason of the foregoing, the Individual Defendants and Interactive have violated §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.  Because of the false and misleading statements in the Proxy, plaintiff and the members of the Class have been damaged.

## COUNT III

**Against the Individual Defendants, Parent, Merger Sub, Lux 3,
Holdings I and Holdings II for Violation of §20(a) of the 1934 Act**

75.     Plaintiff repeats and realleges each allegation set forth herein.

76.     The Individual Defendants acted as controlling persons of Interactive within the meaning of §20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Interactive and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.

77.     Each of the Individual Defendants, Parent, Merger Sub, Lux 3, Holdings I and Holdings II was provided with or had unlimited access to copies of the Proxy and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements

were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

78.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Acquisition.  They were thus directly involved in the making of this document.

79.     Parent, Merger Sub, Lux 3, Holdings I and Holdings II also had direct supervisory control over composition of the Proxy and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy.

80.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants, Parent, Merger Sub, Lux 3, Holdings I and Holdings II were each involved in negotiating, reviewing and approving the Acquisition.  The Proxy purports to describe the various issues and information that they reviewed and considered, descriptions which had input from both the Board and Genesys.

81.     By virtue of the foregoing, the Individual Defendants, Parent, Merger Sub, Lux 3, Holdings I and Holdings II have violated §20(a) of the 1934 Act.

82.     As set forth above, the Individual Defendants, Parent, Merger Sub, Lux 3, Holdings I and Holdings II had the ability to exercise control over and did control a person or persons who have each violated §14(a) and SEC Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to §20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, Interactive's shareholders have been damaged.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive and monetary relief, in plaintiff's favor and in favor of the Class and against defendants, as follows:

A.       Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.       Declaring and decreeing that the Acquisition was entered into in willful or reckless breach of the fiduciary duties of the defendants and awarding plaintiff and the Class appropriate damages for defendants' misconduct;

C.       Declaring that defendants violated the federal securities laws as alleged herein by disseminating the Proxy in connection with the Acquisition, which contains materially false and misleading information about the Acquisition, and awarding plaintiff and the members of the Class compensatory damages in an amount that may be proven at trial, together with interest thereon;

D.       Enjoining defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Acquisition, unless and until the Company discloses all material information to shareholders;

E.       Awarding plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys', experts' and witness fees and other costs; and

F.       Granting such other and further equitable and monetary relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  November 18, 2016                   GEORGE & FARINAS, LLP
                                            KATHLEEN A. FARINAS


                                            _____/s/ Kathleen A. Farinas_____
                                            KATHLEEN FARINAS
                                            LINDA GEORGE

                                            151 N. Delaware Street, Suite 1700
                                            Indianapolis, IN 46204
                                            Telephone:  317/637-6071
                                            kf@lgkflaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID T. WISSBROECKER
EDWARD M. GERGOSIAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

JOHNSON & WEAVER, LLP
FRANK J. JOHNSON
600 West Broadway, Suite 1540
San Diego, CA  92101
Telephone:  619/230-0063
619/255-1856 (fax)

JOHNSON & WEAVER, LLP
W. SCOTT HOLLEMAN
99 Madison Avenue, 5th Floor
New York, NY  10016
Telephone:  212/802-1486
212/602-1592 (fax)

Attorneys for Plaintiff

I:\Admin\CptDraft\Deal\CPT Interactive FED.docx